UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------x
HERIBERTO PALACIO,

                    Plaintiff,

                                        04 Civ. 1990(RJH)(DFE)
            - against-

                                        <u>REPORT AND</u>
                                        <u>RECOMMENDATION</u>
THE CITY OF NEW YORK                    <u>TO JUDGE HOLWELL</u>
and GLENN CARBONI,

                    Defendants.
-----------------------------x

DOUGLAS F. EATON, United States Magistrate Judge.

        The primary purpose of this Report and Recommendation is to
discuss the defendants' July 7, 2008 letter motion, which seeks
dismissal because the *pro se* plaintiff Heriberto Palacio refuses
to obey my order that he answer questions about Indira Montiero,
or face dismissal.  Plaintiff has opposed this motion with a
four-page document dated July 13, 2008.  (He has also submitted
four non-dispositive motions; I have ruled on them as part of
this Report.)  He was released from prison on October 14, 2008,
and he has not given any notice of his current address.  During
the five years of this litigation, he has sent notices to our
Court each time his address changed.  He is very intelligent and,
in my Memorandum and Order dated January 8, 2006, I warned him:
"Plaintiff is required to give prompt written notice, to both the
Pro Se Office and my chambers, about any change of his address.
Any failure to keep the Court advised about his up-to-date
address may result in a dismissal of this lawsuit."  **I have
located Palacio's Parole Officer; I am faxing a copy of today's
Report to her, and she plans to hand it to Palacio on November
19, 2008.  Accordingly, December 5, 2008 is Palacio's deadline to
serve and file written objections to this Report.**

        *Pro se* plaintiff Heriberto Palacio began this lawsuit in
2003.  For most of the past 8 years he was in prison.  In March
1999, he was arrested on a handgun charge; after a jury trial in
late 2000, he was sentenced, as a second felony offender, to a
term of 3 1/2 to 7 years for criminal possession of a weapon in
the third degree.  That conviction was affirmed in *People v.
Palacio*, 22 A.D.3d 248, 801 N.Y.S. 2d 531 (1st Dep't 2005).  He
was paroled on December 31, 2004, but was arrested on November 7,
2005 on charges of larceny.  He pleaded guilty to attempted grand

1

larceny and was sentenced to a term of 1 1/2 to 3 years.

The case at bar concerns a different arrest.  While Palacio was out on bail on the gun charge, he was arrested on April 10, 2000 by Detective Glenn Carboni (now retired).  The charges included criminal contempt of a Temporary Court Order of Protection (issued on March 17, 2000 and effective until April 7, 2000) which ordered Palacio to stay away from Indira Montiero and to refrain from threatening her.  Detective Carboni's criminal complaint stated that a female witness was speaking with Montiero on the telephone on April 1, 2000, and recognized Palacio's voice yelling at Montiero.  On April 7, Montiero's brother told the police that she had been missing since April 1, as reported in New York Daily News articles on April 27 and 28, 2000 (copies annexed to today's Report).  The April 2000 contempt charge was dismissed in October 2000 for failure to bring the case to a speedy trial, but Palacio continued to be held in custody on the 1999 gun charge.  Palacio is suing Detective Carboni for allegedly committing a false arrest and false imprisonment on April 10, 2000.

Palacio's initial Complaint (received by the Pro Se Office on April 10, 2003) and his First Amended Complaint failed to pass muster in preliminary reviews by Chief Judge Mukasey.  Palacio filed a Second Amended Complaint on October 3, 2005, and therefore summonses were finally issued.  In November 2005, the case was assigned to District Judge Richard J. Holwell, who referred the case to me for general pretrial supervision on December 29, 2005.  On April 6, 2006, I held a telephone conference with Palacio and Assistant Corporation Counsel ("ACC") Johana Castro.  By letter dated April 11, 2006, ACC Castro advised me and Palacio that retired Detective Carboni was willing to accept service of the summons and complaint by mail to a designated address; this service was accomplished on August 14, 2006.

On May 31, 2007, Judge Holwell issued a 16-page Opinion and Order, which ended as follows:

> 1. Plaintiff may proceed [a] against the City of New York on his claim of constitutionally inadequate notice as to the procedure for reclaiming his property and contesting its transfer to a third party and [b] against Glenn Carboni on his claims of false arrest and false imprisonment.
>
> 2. All other claims and defendants have been,

or are hereby, dismissed with prejudice.

        *   *   *

The case is hereby returned to
Magistrate Judge Eaton for pretrial
supervision.  The Court certifies pursuant to
28 U.S.C. § 1915(a)(3) that any appeal from
this order would not be taken in good faith.
*See Coppedge v. United States*, 369 U.S. 438,
444-45 (1962).

Despite Judge Holwell's certification, Palacio filed an
interlocutory appeal to the Second Circuit, which dismissed the
appeal on February 25, 2008.

On May 16, 2008, Palacio filed a motion to amend his
complaint yet again.

On June 11, 2008, I held another telephone conference with
Palacio and ACC Castro.  I told Palacio that I was denying his
motion to file a Third Amended Complaint; Judge Holwell, in his
5/31/07 order, had specifically ruled at page 14:  "Now, over
seven years after the events in question, it is simply too late
for any additional amendments."  **I direct the Clerk to note that
I have denied Palacio's motion filed May 16, 2008 (Docket Item
#48).**

As noted above, Judge Holwell's 5/31/07 order allowed
Palacio to proceed on the claims of false arrest and false
imprisonment (solely against Detective Carboni).  The order, at
page 11, noted that these were Cause of Action #10 (¶¶151-180)
and portions of Cause of Action #11 (¶¶181-201).  The essence of
Cause of Action #10 is ¶161, which merely alleges that Carboni
"followed this Plaintiff's every step for about two hours."
Cause of Action #11 complains about the actual arrest; it says in
part:

181.  After being rescued by his attorney and
his aides this Plaintiff was told that he was going
to be arrested.

182.  Puzzled, this Plaintiff asked, "For what?"
The attorney replied, "Violation of a temporary order
of protection" (the temporary order of protection
cited in cause of action #1).

That last part of ¶182 incorporates ¶¶2-11 and ¶¶21-27, which
allege at great length that Indira Montiero requested "to have

the temporary order of protection terminated" (¶7), and that
Palacio's attorney noted this to Judge Bonnie Wittner "[a]t a
hearing for this Plaintiff," and yet the judge "denied the
request and the temporary order of protection remained in
effect." (¶¶26-27.)

Palacio has not stated in the Second Amended Complaint (let
alone under oath and subject to cross-examination) that he obeyed
the Temporary Court Order of Protection, or that he stayed away
from Ms. Montiero during the period from March 17, 2000 through
April 7, 2000. On the present state of the record, it does not
appear that Detective Carboni lacked probable cause to arrest
Palacio for criminal contempt of the Temporary Court Order of
Protection.

During my June 11, 2008 telephone conference, I also
discussed defense counsel's plan to take a deposition of Palacio.
Palacio stated that he would refuse to answer any questions about
Ms. Montiero, and would assert the Fifth Amendment privilege
against self-incrimination. I replied that questions about Ms.
Montiero were relevant to the claims and defenses in this
lawsuit, that defense counsel was entitled to have him answer
such questions, and that I was directing him to answer such
questions. I explained that, if he was refusing to comply with
that directive, then the probable consequence would be the
dismissal of his claims of false arrest and false imprisonment.
Palacio continued to state (calmly and deliberately) that he
would refuse to answer any questions about Ms. Montiero.

Docket Item #51. This was Palacio's first response after my
June 11 telephone conference: a "Motion for a Protective Order"
dated June 17, 2008. After lengthy resistance, he had finally
delivered a release authorizing the Law Department to obtain the
records of his April 2000 arrest, records that had been sealed
pursuant to New York Criminal Procedure Law 160.50 and 160.60.
His June 17 motion now requests me "to prevent Respondents/
Defendants from utilizing the data that was formerly protected by
CPL 160.50 for any purpose other than this civil action." This
motion is moot. A year earlier, Judge Holwell granted this
relief in his 5/31/07 order at p. 13, which "direct[ed]
defendants' counsel to restrict the use of this information to
these proceedings [namely, 04 Civ. 1990 (RJH)(DFE)]." **I direct
the Clerk to note that I hereby deny Palacio's 6/17/08 motion
(filed 6/18/08, Docket Item #51) as moot.**

I now turn to the "main event," the letter motion to me from
ACC Castro dated July 7, 2008 (copy annexed to today's Report).
The motion requests that the case be dismissed pursuant to Fed.

4

R. Civ. Pr. Rule 37(b), based on Palacio's refusal to comply with my order that he answer questions about Ms. Montiero.  ACC Castro writes, at p. 3:

> On June 11, 2008 the Court held a telephone conference in this matter.  During this conference, Your Honor explained the discovery process to plaintiff and ordered him to answer all questions at his deposition. [FN 1:] Where oral proceedings unequivocally give a litigant notice that certain discovery is to be produced, the absence of a written order does not preclude the entry of a default judgment for failure to comply.  See Jones v. Uris Sales Corp., 373 F.2d 644 (2d Cir. 1967).

> Plaintiff's surviving claims are false arrest, false imprisonment and denial of due process with respect to property allegedly seized pursuant to his arrest.  Plaintiff was arrested on April 11 [10?], 2000 for violating an order of protection concerning Ms. Montiero.  Moreover, plaintiff was a suspect in the homicide investigation of Ms. Montiero.  Further, in his Complaint, plaintiff sets forth his version of facts concerning Ms. Montiero and her order of protection against him.  (Second Amended Complaint ¶¶ 2-29).  Accordingly, defendants respectfully submit that by filing a claim for false arrest/false imprisonment, plaintiff has placed his relationship with Ms. Montiero at issue.  As such, questions regarding Ms. Montiero are crucial to the defense of this case[,] as plaintiff's arrest and seizure of his property centers around Ms. Montiero.  Defendants seek to question plaintiff about his relationship and interactions with Ms. Montiero; the prior history of domestic complaints concerning plaintiff and Ms. Montiero; and the order of protection Ms. Montiero had at the time of plaintiff's arrest.  A finding of "prejudice" under Rule 37(b) is proper if the failure to make discovery impairs an opponent's ability to determine the factual merits of a party's claim.  Avionic Co. v. General Dynamics Corp., 957 F.2d 555, 559 (8th Cir. 1992).

Here, plaintiff's willful refusal to answer
any questions concerning Ms. Montiero
prejudices defendants and prevents them from
fully examining the veracity of plaintiff's
allegations.

    ... Moreover, Rule 37(b)(2)(v) states in
relevant part that "if a party ... fails to
obey an order to provide or permit discovery
... the court where the action is pending may
issue further just orders ... [including] ...
dismissing the action or proceeding in whole
or in part." ....

Palacio responded with a 13-paragraph "Motion in Opposition"
dated July 13, 2008, which I will discuss later.  But I now
digress to discuss two non-dispositive motions from Palacio,
Docket Items #52 and #54.

    Docket Item # 52.  This is Palacio's "Omnibus Motion" dated
July 13, 2008.  I will discuss its ¶¶ 3-7, and then its ¶¶ 1-2.

    In ¶ 3, he asks me to recuse myself.  He writes: "At
the June 11, 2008 tele-conference, the Magistrate advocated on
behalf of the defendants .... Assistant Corporation Counsel
Johana Castro never got to speak one word to this Plaintiff ...."
My response is that I sincerely believe that I am impartial in
this case and that my impartiality is not reasonably subject to
question.  I decline to recuse myself.

    In ¶ 4, Palacio "requests a copy of the tape recording
or transcript of the June 11, 2008 tele-conference."  I do not
record my telephone conferences; there is no tape recording and
no transcript.  As will be seen, Palacio does not dispute that I
orally directed him to answer questions about Ms. Montiero, that
I warned him that refusing to answer would probably result in
dismissal of his claims for false arrest and false imprisonment,
and that he continued to state that he refuses to answer any
questions about Ms. Montiero.

    In ¶¶ 4-5, he alleges that the June 11 telephone
conference "was illegally terminated by Correction Counselor T.
Nelson," and he requests that I hold her in contempt.  I deny
this request.  According to my notes, the telephone conference
ran from 10:14 to 10:55.  At the end, I heard Ms. Nelson say,
"Let me speak to the judge."  Palacio replied, "Absolutely not, I
need much more than five more minutes."  The phone was hung up.
I had not given any order to Ms. Nelson that my conference was to

go beyond 10:55.  In any event, Palacio subsequently had ample opportunity to write to me and give me any reasons why he should not be put to the choice of (a) dismissal of his civil lawsuit or (b) answering questions about Ms. Montiero even if he believes that his answers may tend to subject him to criminal prosecution.

In ¶ 6, Palacio writes: "Plaintiff has filed a [May 16, 2008] motion to amend the complaint, which was discussed at the June 11, 2008 tele-conference, but Plaintiff has not received any [written] 'Order' or decision related to the motion to amend." In the discussion, I orally denied leave to file a Third Amended Complaint.  That oral order has been now been put in writing on an earlier page of today's Report.

In ¶ 7, he asks for a ruling on his June 17 motion for a protective order.  As noted above, I have today denied the June 17 motion as moot because its request for relief was granted by Judge Holwell last year.

In ¶¶ 1-2, Palacio moves for an order compelling the defendants to respond to his discovery requests dated April 16 and June 17, 2008.  In view of Palacio's refusal to answer questions about Ms. Montiero, I decline to compel the defendants to provide any discovery to him.  See *Jean-Laurent v. Wilkinson*, 508 F.Supp.2d 226 (S.D.N.Y. Aug. 20, 2007), in which I wrote:  "I hereby deny plaintiff's ... motion to compel the defendants to answer further interrogatories and document requests.  Moreover, in view of plaintiff's continuing delays in providing elementary discovery to defense counsel, it is highly unlikely that I will grant any future motions from him seeking to compel discovery." See *id.*, 508 F.Supp.2d 227 (S.D.N.Y. Sept. 12, 2007), in which Judge Marrero adopted my order in its entirety.

**I direct the Clerk to note that I hereby deny Palacio's 7/13/08 Omnibus Motion (filed 7/17/08, Docket Item #52) in its entirety.**

Docket Item # 54.  This is a Motion to Compel, dated August 18, 2008, in which Palacio again moves for an order compelling the defendants to respond to the same two discovery requests.

**I direct the Clerk to note that I hereby deny Palacio's 8/18/08 Motion to Compel (filed 8/22/08, Docket Item #54).**

As promised, I now turn to Docket Item #53, Palacio's 13-paragraph opposition to the dismissal motion.  It is handwritten; for the convenience of Judge Holwell, my law clerk has typed it out as follows (the emphases are Palacio's):

1.  [Defendant] falsely alleges that "plaintiff was a suspect in the homicide investigation of Ms. Montiero.["]

2.  The truth is that defendant lies/lied, as there has never been any "homicide investigation," as there is no evidence of any "homicide", or any other foul play in the "investigation["] that began in 2000, and was thereafter "closed," case dismissed and sealed in favor of this Plaintiff.

3.  Defendant erroneously alleges that "Plaintiff has placed his relationship with Ms. Montiero at issue."

4.  Plaintiff's "relationship with Ms. Montiero" is not, nor has it ever been "at issue" in this civil proceeding.  It is an axiom of our jurisprudence, that what is at issue in a false arrest, unlawful imprisonment . . . case is the "knowledge or reasonably trustworthy information" of "the authorities . . . sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  *Golino v. City of New Haven*, 950 F.2d 864, 970 (2d Cir. 1991).  See also: ... *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000); ... *Baker v. McCollan*, 99 S.Ct. 2689 at 2694, 443 U.S. [137 at] 143 (1979); [Palacio also cites four other cases].

5.  "Defendants seek to" denude Plaintiff of his First, Fifth, and Sixth Amendment rights by "question[ing] plaintiff about his relationship and interactions with Ms. Montiero; the prior history of domestic complaints concerning plaintiff and Ms. Montiero; and the order of protection Ms. Montiero had at the time of plaintiff's arrest."

6.  "Defendants" also seek to question Plaintiff about "the prior history of domestic complaints" which were all part and parcel of data sealed pursuant to CPL 160.50. AND, PROTECTED BY CPL 160.60.  Plaintiff will

8

not consent to any waiver of his .50/.60
rights other than already expressed "limited"
waiver executed for the matter at hand
heretofore.

7.   Defendant alleges "'prejudice' under
Rule 37b" <u>supposedly</u> because Plaintiff's
refusal to waive his First, Fifth and Sixth
Amendment rights "impairs . . . opponent's
ability to determine the factual merits of a
party's claim."   However, defendants opt to
ignore the fact that the axioms of our
jurisprudence state that what is "at issue"
in a "false arrest," "unlawful imprisonment"
. . . civil action is the knowledge and
information known and acted upon <u>by the
defendants</u> - - NOT THE PLAINTIFF!   All the
data the defendant needs is in the hands,
documents and records of <u>the DEFENDANTS</u>!

8.   Defendants['] failed attempt at
prosecution for a crime that by all
evidentiary accounts never occurred leads the
defendants to attempt to use this civil
action as a collateral attack upon this
Plaintiff, and an attempt to subvert and
circumvent Plaintiff's First, Fifth and Sixth
Amendment rights (and concomitant CPL 160.50
and .60 rights).

9.   The only facts set forth "concerning
Ms. Montiero and her order of protection"
were the facts that Ms. Montiero did not want
the "order of protection," fought to get it
terminated, and was subjected to loss of
consortium by the defendants (as was
Plaintiff and his daughter) who refused to
terminate the order - - over her objections.
Defendants do not need Plaintiff to verify
facts that are documented in their own
records, in family court records[,] and, can
be attested to under the penalty of perjury
by numerous credible witnesses, some of whom
are officers of the court.

10.   The motion/request by defendants
should not be granted because the data
requested (via deposition) is not "material,"

9

nor do they affect/effect the "merits of a party's claim," since all claims related to the "order of protection," Plaintiff's relationship with Ms. Montiero etc., <u>HAVE BEEN DISMISSED</u>!!

11.  The motion/request by defendants should be "denied in its entirety" "in the interests of justice" because to do otherwise would unconstitutionally <u>punish Plaintiff for exercising his constitutional rights</u>.  <u>NEVER MAY THAT HAPPEN</u>!!

12.  Defendant contends that Plaintiff refuses "to comply with the June 11, 2008 court order," but <u>NO SUCH ORDER EXISTS</u>!! If it does, Plaintiff has not received it!

13.  Defendant seeks dismissal of this proceeding pursuant to Rule 37(b) for failure to cooperate with discovery, yet defendant <u>has not</u> responded to <u>two</u> (2) heterogeneous discovery requests by this Plaintiff.  This is extremely prejudicial to this pro se plaintiff - - especially since all the proof/ evidence he needs is in Plaintiff's [Defendants'] possession.

Palacio's opposition does not dispute that I issued an oral order that he answer questions about Ms. Montiero or face dismissal, and that he refused and refuses to answer any questions about Ms. Montiero.  His opposition makes no response to ACC Castro's citation of *Jones v. Uris Sales Corp.*, 373 F.2d 644 (2d Cir. 1967), for the principle that where an oral order is clear, the absence of a written order does not preclude the entry of a default judgment for failure to comply.  See also *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1362-63 (2d Cir. 1991); *Avionic Co. General Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992) ("Oral proceedings compelling discovery that 'unequivocally give a litigant notice' of the discovery required are a sufficient basis for Rule 37(b)(2) sanctions."); *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1543 n. 7 (11th Cir. 1993).

In voluntarily bringing a lawsuit, a plaintiff becomes subject to various responsibilities, including discovery obligations.  Fed. R. Civ. Pr. Rule 37 provides for an array of sanctions if a party fails to meet its discovery obligations.

Rule 37(b)(2)(A) provides:

> If a party ... fails to obey an order to provide or permit discovery, ... the court where the action is pending may issue further just orders. They may include the following:
>
> \*     \*     \*
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> \*     \*     \*
>
> (v) dismissing the action or proceeding in whole or in part;
>
> \*     \*     \*
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

In *Valentine v. Museum of Modern Art*, 29 F.3d 47 (2d Cir. 1994)(*per curiam*), the Second Circuit stated:

> The severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding *pro se*, so long as a warning has been given that noncompliance can result in dismissal. *See, e.g., Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d at 766 (affirming dismissal of *pro se* action); *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988) (same). "[A]ll litigants, including pro ses, have an obligation to comply with court orders." *Minotti v. Lensink*, 895 F.2d at 103 (internal quotes omitted).

In *Baker v. Ace Advertisers' Service, Inc.*, 153 F.R.D. 38, 42 (S.D.N.Y. 1992), "the Magistrate Judge asked [*pro se*] Plaintiff if he intended to appear at his deposition .... Plaintiff responded that he did not intend to comply with the discovery orders." Accordingly, Judge Wood dismissed the complaint.

Taking the deposition of a plaintiff is important to make clear what testimony might be given if the case were to go to trial, and to get answers promptly, before memories fade.

Retired Detective Carboni is charged with false arrest and false imprisonment.  He is entitled to a complete dismissal unless there is evidence showing that he and his fellow officers lacked probable cause.  Moreover, the Second Circuit has written:

> ... Finally, we have said that in the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show "arguable" probable cause.  *See Lee [v. Sandberg]*, 136 F.3d [94] at 103 [2d Cir. 1997].  *See also Robison [v. Via]*, 821 F.2d [913] at 921 [2d Cir. 1987] (qualified immunity is warranted if officers of reasonable competence could disagree on whether the probable cause test was met).

*Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000).

An important issue is whether, based on all the circumstances, there was probable cause to believe that Palacio had put himself in contact with Ms. Montiero or otherwise violated the terms of the Temporary Court Order of Protection at any time during the period when it was in effect, from March 17, 2000 through April 7, 2000.  Hence, it is relevant to the claims and defenses to seek information about Ms. Montiero's location and Palacio's location during that period, and information about their relationship.  No one has any way to contact Ms. Montiero, and hence defense counsel is unable to seek such information from her.

I find that Palacio's invocation of his Fifth Amendment privilege is entirely sincere, as can be confirmed by reading the Daily News articles about the investigation of a possible homicide of Ms. Montiero.  No statute of limitations has expired on any possible prosecution for homicide.  By contrast, Palacio would not have a realistic fear of prosecution for violating the Temporary Court Order of Protection, which expired on April 7, 2000.

On the topic of discovery, there are many differences between criminal cases and civil cases.  Our Court is not conducting a probable cause hearing in a criminal case.  In a civil case, a plaintiff may face civil consequences, including dismissal, if he refuses to answer relevant questions because of a fear that his answers might later be used against him in a

criminal prosecution.

In *Independent Productions Corp. v. Loew's, Inc.*, 22 F.R.D. 266, 276-79 (S.D.N.Y. 1958), Judge Herlands directed the plaintiffs to choose between waiving their First and Fifth Amendment privileges or facing dismissal of their lawsuit.  He wrote:

> It would be uneven justice to permit plaintiffs to invoke the powers of this court for the purpose of seeking redress and, at the same time, to permit plaintiffs to fend off questions, the answers to which may constitute a valid defense or materially aid the defense.
>
>         *   *   *
> . . . Plaintiffs in this civil action have initiated the action and forced defendants into court.  If plaintiffs had not brought the action, they would not have been called on to testify.  Even now, plaintiffs need not testify if they discontinue the action.  They have freedom and reasonable choice of action.  They cannot use this asserted privilege as both a sword and a shield.  Defendants ought not be denied a possible defense because plaintiffs seek to invoke an alleged privilege.

*Independent Productions*, 22 F.R.D. at 276-77.

Moreover, in a civil forfeiture proceeding where the Government had the burden of proof, Judge Calabresi wrote for the Second Circuit as follows:

> The underlying facts amply support the District Court's conclusion that Tapia-Ortiz was using the Fifth Amendment improperly.  [Tapia-Ortiz was the owner of real property as to which the Government sought forfeiture.]  Before his initial invocation of the Fifth Amendment, Tapia-Ortiz, by failing to answer any of the Government's interrogatories for nearly a year, had stonewalled the Government's attempt to proceed with its action.  After a Magistrate Judge, losing patience, ordered him to reply to the Government's attempts to obtain discovery within twenty days, Tapia-Ortiz finally responded but

13

limited his answers by invoking the Fifth Amendment.
When ordered to supplement some of his other deficient
answers to the Government's questions, he again
asserted the privilege against self-incrimination.
At last, a full six months later and only after the
Government had actually moved for summary judgment
did Tapia-Ortiz indicate that he wished to waive the
Fifth Amendment and submit to the Government's
discovery efforts.  At no time during any stage
of the proceedings did Tapia-Ortiz approach the
District Court to seek any sort of accommodation
of his Fifth Amendment interests.

    Given this pattern of abusing the discovery
process, the District Court appears to have been
acting well within its discretion when it ruled
that Tapia-Ortiz was to be prevented from
submitting "any material previously claimed to be
[covered by his] Fifth Amendment privilege against
self-incrimination."  *4003-4005 Fifth Avenue*,
840 F.Supp. at 7-8.  His history of obstruction
suggests that Tapia-Ortiz was simply using all
available techniques - - including the Fifth Amendment
- - to hinder and delay the Government's action.
On these facts, the District Court was entitled to
conclude that Tapia-Ortiz ought not to be allowed
to block the Government's action through such means,
and especially ought not, without sanctions, to be
allowed to use the Fifth Amendment to further his
obstructionist purposes.

    ... [G]iven the lengthy delay Tapia-Ortiz
precipitated, and the timing of his attempt to
withdraw his prior assertion of the Fifth Amendment,
the Court in this case could reasonably presume
prejudice to the Government from the manner in which
he had utilized the privilege.  As courts and
commentators have noted, opposing parties will
frequently suffer prejudice (at the very least from
increased costs and delays) when a litigant relies
on the Fifth Amendment during discovery and then
decides to waive the privilege much later in the
proceeding.  ...

*United States v. 4003-4005 5th Ave., Brooklyn, NY*, 55 F.3d 78, 86
(2d Cir. 1995).

    The case at bar presents an even stronger case for

14

dismissal.  In a civil rights case, a police officer is entitled
to avoid discovery if it appears that he is entitled to qualified
immunity.  Moreover, the Second Circuit has written:

> ... Where a false arrest plaintiff has been
> charged with a crime for which he was arrested,
> he must produce evidence directly rebutting that
> charge in order to carry his burden of production. ...
>
> As noted in footnote 8, however, it remains
> an open question in this circuit whether the
> plaintiff or the defendant carries the ultimate
> burden of proof with regard to probable cause in
> a § 1983 unconstitutional false arrest case.

*Davis v. Rodriguez*, 364 F.3d 424, 434-45 (2d Cir. 2004).  Here,
we have (a) the criminal complaint signed by Detective Carboni,
and (b) Palacio's refusal to answer questions about Ms. Montiero
on the grounds that the answers might tend to incriminate him.
Palacio's refusal creates a strong inference against him, and is
very likely sufficient to persuade Judge Holwell that Detective
Carboni has shown "arguable" probable cause and therefore is
entitled to qualified immunity under *Martinez v. Simonetti*, 202
F.3d 625, 634 (2d Cir. 2000).  Ironically, Palacio's opposing
papers cite *Martinez*.  In my view, the decisions in *Martinez* and
*Independent Productions* and *United States v. 4003-4005 5th Ave.*
show that Palacio, having invoked the Fifth Amendment as to
questions directly relevant to probable cause, is not entitled to
insist that Retired Detective Carboni engage in any further
discovery or litigation concerning the claims of false arrest and
false imprisonment.

I find that Palacio, from June 11, 2008 to the present, has
calmly, deliberately and wilfully refused to obey my order to
answer questions about Ms. Montiero.  I find that Palacio's
conduct has caused prejudice to the City and to retired Detective
Carboni, and also to several judges, not only by his refusal to
answer questions about Ms. Montiero, but also by his numerous
delaying tactics.  The April 2000 charges were dismissed in
October 2000 (not with any finding of lack of probable cause),
yet Palacio waited until April 2003 to mail his first version of
the Complaint to our Court.  He spent time asking Judge Holwell
to overrule Chief Judge Mukasey, and he later spent time asking
the Second Circuit to hear an interlocutory appeal concerning
Judge Holwell's partial dismissal.  Palacio unreasonably opposed
defense counsel's routine request that he consent to unsealing
the Criminal Court records concerning the arrest about which he
was suing.  This forced defense counsel and me and Judge Holwell

15

to expend a great deal of time.

"[C]ourts must take care not to punish valid invocations of the privilege against self-incrimination and must try to accommodate those who would properly seek to claim the privilege ...." *United States v. 4003-4005 5th Ave.*, 55 F.3d at 80.  I see no fair way to accommodate Palacio's Fifth Amendment rights with his civil claims for false arrest and false imprisonment.  In my view, any sanction less than dismissal of those claims would be unfair to the City, and to Retired Detective Carboni, and to defense counsel.  In addition, Rule 37(b)(2)(C) says:

> *Payment of Expenses*.  Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

I find that Palacio's refusal to obey my order that he answer questions about Ms. Montiero was not "substantially justified," and I see "no other circumstances [that] make an award of expenses unjust."  Palacio has recently been released on parole, and I think it might be a financial hardship for him to pay the defendants the full amount of the reasonable expenses caused by his refusal.  Defense counsel is free to decide whether to supply Judge Holwell with an affirmation concerning such expenses, including a description of the hours spent by the Law Department, or to wait for further order from Judge Holwell.  On the present record, I recommend that Palacio be required to pay $1,000 to the defendants; I am sure that this is far less than the full amount.

The defendants' letter motion raises the question of whether it would be fair to grant the dismissal motion only as to the claims for false arrest and false imprisonment.

The only other claim that survived Judge Holwell's May 31, 2007 order was a claim that the City "deprived him [Palacio] of his property without due process of law by failing to provide him with notice of the procedure for recovering property seized by the Police Department and contesting the transfer of property to a third party.  This claim is specifically contained in the twelfth and sixteenth cause[s] of action." (5/31/07 order, p. 8.)  In my June 11, 2008 telephone conference, Palacio supplied a few details about one item of property, a 1995 Ford that he purchased on credit in 1998; it was either sold at auction or repossessed

by the used-car finance company after his April 2000 arrest.
(See Second Amended Complaint, ¶¶242, 276-78.)  The twelfth and
sixteenth causes of action refer vaguely to "chattels" contained
in his apartment (¶202) and in his car (¶242).  In my telephone
conference, Palacio said that he believes the police seized cash,
jewelry, and stock certificates; however, it appears that he has
not offered any documentary evidence to show that those alleged
items of property were in existence and were owned by him.  If
Palacio were to prevail on his property claim, the City would be
entitled to an offset to the extent of any unpaid costs and
attorney's fees.

        On the present record, I think Palacio's Fifth Amendment
rights can be accommodated with his property claim against the
City.  I recommend that Judge Holwell deny that part of the
City's letter motion that seeks outright dismissal of the
property claim.  On the other hand, I recommend that Judge
Holwell stay all proceedings on the property claim until either
(a) Palacio makes full payment to the defendants of the
reasonable expenses, including attorney's fees, caused by his
refusal to comply with my June 11 order, or (b) Palacio files a
dismissal with prejudice as to his property claim.  If Judge
Holwell dismisses the false arrest and false imprisonment claims,
and if Palacio files a dismissal with prejudice as to his
property claim, then there would be an appealable final judgment
on all of the claims in the case at bar, and Palacio would have
30 days in which to file a notice of appeal with respect to all
of the orders issued by Judge Holwell.

## CONCLUSION AND RECOMMENDATION

        As noted above, I deny the following non-dispositive motions
made by plaintiff:  Docket Items #48, #51, #52, and #54.

        As to the defendants' letter motion dated July 7, 2008 (copy
annexed to today's Report), I find that plaintiff willfully
refused to comply with my June 11, 2008 order that he answer
questions about Ms. Montiero, or face dismissal.  I recommend
that Judge Holwell impose two sanctions:  dismissal of the false
arrest and false imprisonment claims with prejudice, and an order
that plaintiff pay the defendants the reasonable expenses,
including attorney's fees, caused by plaintiff's refusal to
comply with my order.  On the present record, I recommend that
plaintiff be required to pay $1,000 to the defendants; I am sure
that this is far less than the full amount.

        I recommend that Judge Holwell stay all proceedings on the

property claim until either (a) Palacio makes full payment to the defendants of the reasonable expenses, including attorney's fees, caused by his refusal to comply with my June 11 order, or (b) Palacio files a dismissal with prejudice as to his property claim.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy (i.e., **no later than December 5, 2008**), by filing written objections with the Clerk of the U.S. District Court and mailing copies (a) to the opposing party's attorney, (b) to the Hon. Richard J. Holwell, U.S.D.J. at Room 1950, 500 Pearl Street, New York, NY 10007, and (c) to me at Room 1360, 500 Pearl Street, New York NY 10007. Failure to file objections within 10 business days will preclude appellate review. *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. Rules 72, 6(a), and 6(d). Any request for an extension of time must be addressed to Judge Holwell.

Douglas F. Eaton

DOUGLAS F. EATON
United States Magistrate Judge
500 Pearl Street, Room 1360
New York, New York 10007
Telephone: (212) 805-6175
Fax: (212) 805-6181fax

Dated:   New York, New York
         November 19, 2008

Copies of this Report and Recommendation (and of the 4/27/00 and 4/28/00 New York Daily News articles, and of the 7/7/08 letter motion by the defendants) are being sent on the morning of November 19, 2008 to:

Heriberto Palacio, 06A3218
c/o New York State Parole Officer
     Antoinette Luces by fax to 718-402-6840fax

Johana Castro, Esq.
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007

Pro Se Office

Hon. Richard J. Holwell

18

Case 1:04-cv-01990-RJH Document 55 Filed 11/19/08 Page 19 of 28

Copyright 2000 Daily News, L.P.
Daily News (New York)

April 27, 2000, Thursday SPORTS FINAL EDITION

**SECTION:** NEWS; Pg. 5

**LENGTH:** 1002 words

**HEADLINE:** Without a trace Boyfriend held as cops search for woman

**BYLINE:** By BARBARA ROSS and ALICE McQUILLAN DAILY NEWS STAFF WRITERS

#### BODY:

The last time cops know for certain that Indira Montiero was alive, she was chatting with a girl-friend on the phone. In the background, a man screamed and cursed at the vibrant young mother.

The voice, authorities say, belonged to Heriberto (Eddie) Palacio, the father of Montiero's 13-month-old girl and a convicted killer.

"Leave me alone," Montiero, 22, shouted as she ended the call and promised to phone her friend the next day. She never did. That was April 1.

Since then, no one has heard from Montiero. Palacio, 31, didn't report her missing, and he is being held on an unrelated gun charge, with prosecutors saying he refuses to help search for the woman he claims to love.

Investigators are operating on the presumption that Montiero is dead, and their focus is on Palacio, according to several law enforcement sources.

"We believe this is a murder," said one high-ranking Police Department source.

Fearful that each day may bring tragic news, Montiero's friends and relatives focus on the woman they miss, calling her beautiful, ambitious and sharp. Her only flaw, several said, was her boundless love for Palacio.

She bailed him out of jail at least twice and stayed with him in their Harlem apartment despite swearing out 11 domestic violence complaints against him, police records show. He swore out four complaints against her, according to the records.

"She deeply, deeply loved him, and love makes people do crazy things," said her brother, Franklin Davis, 24.

The brunette with almond-shaped eyes and a head for business was working as an accounting clerk for a midtown firm and attending classes at the Borough of Manhattan Community College, with accounting as her major.

Because she had trouble finding clothes to fit her 5-foot-2, 110-pound frame, she also figured there was an Internet market for petite women's clothing and talked about starting her own Web site. That's what she was discussing during her last telephone chat, said her friend, who requested anonymity.

"I think she had places to go, really," said Hari Samaroo, her boss at the George R. Funaro accounting firm.

Montiero's ambition brought her together with Palacio. She met him two years ago, at a real estate agent course. A building superintendent, he also was a weightlifter with a lean body "'like Michelangelo's 'David,'" Davis said.

There were good times, like a cruise to the Caribbean, the couple's happiness captured in a photo hanging in their apartment at 1833 Seventh Ave.

On Feb. 23, 1999, Montiero gave birth to a daughter, naming her Sky and using her smiling photo as a screen saver on her office computer.

But Palacio and Montiero began to argue, friends said, and his criminal past haunted them.

When Palacio was 14, he and an accomplice beat a man to death with a stick and a bat on a Bronx corner. Charged with second-degree murder, Palacio pleaded guilty to manslaughter and served two years.

In January 1999, he was charged with attacking a female tenant in the building where he and Montiero lived and where he was superintendent. That case is pending.

Two months later, Montiero called her brother in tears: Palacio had been arrested on a gun charge after cops came to their apartment on one of her domestic violence complaints. They found a 9-mm. semi-automatic handgun.

She wanted advice about bailing him out - even though Palacio blamed her when cops found the gun, saying, "That's my girlfriend's," according to court papers.

Davis said he told his sister, "'Do what's in your heart,' and that's when she bailed him out."

She posted $500 bail. And in January, when Palacio's bail was increased, she gave a bondsman $2,250 as collateral to free him, even signing an agreement to pay another $5,250 if he skipped, court papers show.

Davis said he thinks she stayed with Palacio because she wanted a strong male presence in her life. Her father, he said, died when she was 5.

"She was always trying to work it out with him," said her aunt Jeanette Rivera. "We told her, 'Leave the guy, he's crazy.' But you can't tell these girls, inexperienced with love and men. They don't listen."

Then she vanished. It was Davis who finally told police that his sister was missing, six days after her last known phone call, Davis and police said.

Palacio said he didn't report Montiero missing because he feared arrest on a recent order of protection requiring him to stay away from her, police records show.

Without a trace Boyfriend held as cops search for woman Daily News (New

He told friends Montiero left home April 2 for a hairdresser's appointment and didn't return, a police source said. But cops quickly learned she didn't go to the hairdressers that day, the source added.

Palacio also said he'd meet detectives April 10, but didn't show up, police said. Cops staked out his parked car, found him and searched the couple's apartment, finding Montiero's clothes and beeper.

Palacio was locked up immediately on the order of protection and a child abandonment charge for leaving Sky at her baby-sitter's April 7.

Manhattan Assistant District Attorney Leemie Kahng argued during a court hearing April 13 that Palacio should stay behind bars. She cited the April 1 phone call.

"The defendant [was] yelling at her and swearing at her in a threatening manner, at which time that was the last that anybody has heard or seen Ms. Montiero," Kahng said in court.

Palacio's attorney, James Phillips, blasted prosecutors, telling the judge, "They are not alleging she is dead. She [Kahng] is saying you should draw some sinister inference from the fact that her friends and family can't contact her."

He told the Daily News that Palacio is being held because of "innuendo and wild speculation."

Manhattan Supreme Court Justice Bonnie Wittner granted Kahng's request and referred to Montiero's disappearance.

"It is not that she has not shown up somewhere," she said. "She has a 1-year-old. That baby was left with a baby-sitter. It is almost two weeks. She hasn't shown up at her job or her apartment."

With Tara George

**LOAD-DATE:** April 27, 2000

2 of 5 DOCUMENTS

Copyright 2000 Daily News, L.P.
Daily News (New York)

April 28, 2000, Friday SPORTS FINAL EDITION

**SECTION**: NEWS; Pg. 8

**LENGTH**: 388 words

**HEADLINE**: COPS, SEARCH DOGS HUNT MISSING MOM IN QUEENS

**BYLINE**: By BILL EGBERT and ALICE McQUILLAN DAILY NEWS STAFF WRITERS

**BODY**:
Detectives using police dogs searched a grassy area along the Grand Central Parkway in Queens yesterday as they investigated a young Harlem mother's disappearance.

Indira Montiero, 22, vanished April 1 after her boyfriend screamed and cursed at her while she chatted on the telephone. The boyfriend, **Heriberto Palacio**, 31, is being held in another case, but prosecutors say he never reported Montiero missing and is refusing to help find her.

On April 2, Montiero's wallet was found in a gas station next to the Grand Central Parkway near LaGuardia Airport, police sources revealed yesterday.

The wallet - holding Montiero's identification and credit cards - had been placed at one of seven pay phones at the Mobil station opposite the Delta Air Lines terminal, the sources said.

Police said the discovery of the wallet did not immediately come to light because the station attendant who found it didn't report the discovery, hoping the owner would return.

The team of detectives and three police search dogs searched several miles along the parkway near the gas station yesterday afternoon, police said. They didn't find any trace of Montiero.

A police source suggested that the wallet was left in such a visible location in a bid to confuse investigators and cast doubt on whether any more evidence would be found nearby.

"I think it was placed there . . . to throw us off," said the source. "It was placed so obviously to be found; it wasn't as if someone threw it there."

Police would not say when they learned of the wallet's discovery. Montiero's brother reported her missing April 7. Friends and loved ones fear the worst because they say the young mother would never have left her 13-month-old daughter alone.

The woman's clothing and beeper were found in her apartment by police after she was reported missing.

Police officials would not say why they launched the search yesterday, the day the woman's disappearance was reported in the Daily News.

Palacio and Montiero, friends and relatives said, had a volatile relationship involving constant arguments and orders of protection. Palacio's attorney has blasted law enforcement tactics as "a potpourri of innuendo and wild speculation."

Anyone with information on the case is asked to call (800) 577-TIPS or 28th Precinct detectives at (212) 678-1608.

**GRAPHIC:** Indira Montiero

**LOAD-DATE:** April 28, 2000




THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**MICHAEL A. CARDOZO**
*Corporation Counsel*

**JOHANA V. CASTRO**
Assistant Corporation Counsel
phone: (212) 788-0976
fax: (212) 788-9776
email: jcastro@law.nyc.gov

July 7, 2008

BY FAX & COURTESY COPY BY HAND
(212) 805 – 6181
Honorable Douglas F. Eaton
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: <u>Palacio v. The City of New York et al.</u>, 04 CV 1990 (RJH) (DFE)

Dear Magistrate Judge Eaton:

I am an Assistant Corporation Counsel in the Special Federal Litigation Division of the New York City Law Department assigned to the above referenced case. I am writing pursuant to Rule 37(b) of the Federal Rules of Civil Procedure to respectfully request that the Court dismiss this matter for plaintiff's failure to comply with discovery. Specifically, during the June 11, 2008 telephone conference, Your Honor ordered plaintiff to answer all questions asked at his deposition, but plaintiff stated to the Court that he would refuse to answer any questions regarding Indira Montiero, his missing ex-girlfriend. Plaintiff further informed the Court that he would invoke his Fifth Amendment privilege at the deposition if defendants asked any questions related to Ms. Montiero. As set forth below, defendants respectfully submit that plaintiff's refusal to obey the Court's order regarding deposition discovery warrants dismissal of the instant action.

**Background**

By way of background, plaintiff alleges in his complaint, inter alia, that in April 2000 he was falsely arrested, maliciously prosecuted and denied due process with respect to property allegedly seized pursuant to his arrest. The events arise from an investigation of plaintiff for the homicide of his girlfriend, Indira Montiero.

**Procedural History**

On March 15, 2004, Chief Judge Mukasey (i) dismissed all of plaintiff's claims against Judge Bonnie Wittner, New York District Attorney Robert Morgenthau, 1833 Seventh Avenue Co., Irving Langer, Galil L.L.C. and Chrysler Financial Co. L.L.C.; (ii) dismissed plaintiff's claims for false arrest, false imprisonment, malicious prosecution, conspiracy, retaliation, and damages for deprivation of property; and (iii) granted plaintiff leave to amend his complaint "in order to detail his claims that defendants violated his due process rights in failing to provide him adequate notice and opportunity to be heard regarding plaintiff's claiming of his seized property," and in order to detail his claims regarding an alleged wrongful municipal policy or custom.

On July 26, 2004, plaintiff filed an amended complaint that failed to comply with Judge Mukasey's March 15, 2004 order. Therefore, on March 25, 2005, Judge Mukasey entered an order directing plaintiff to submit a second amended complaint. After requesting several extensions, plaintiff filed a Second Amended Complaint on October 3, 2005. On December 23, 2005, the Court entered an order referring the case to Your Honor for general pretrial supervision.

On March 27, 2006 and April 14, 2006 this office forwarded to plaintiff's attention a "Designation of Agent for Access to Sealed Records Pursuant to NYCPL §160.50(1)(d)" so that the records pertaining to plaintiff's arrest and detention could be accessed. As the Court is aware, the City cannot access general police records or any other records from the various City agencies or the Courts until it receives proper releases from the plaintiff. Plaintiff failed to provide this office with the §160.50 release; thus, on April 26, 2006, this office wrote to the Court to request that plaintiff be compelled to provide this office with the executed release by a date certain. By Order dated May 3, 2006 the Court ordered plaintiff to provide this office with the executed release "no later than May 12, 2006." Plaintiff did not provide the release by May 12, 2006; instead, plaintiff sent this office a "Motion for Reconsideration" dated May 24, 2006 which requested that the Court reconsider it's order directing plaintiff to provide us with the releases. On June 7, 2006, this office wrote to the Court to oppose plaintiff's motion and to again respectfully request that plaintiff be compelled to provide us with the §160.50 release by a date certain on pain of dismissal. By Order dated June 19, 2006, the Court directed plaintiff to provide this office with the executed release "no later than June 30, 2006." In the June 19, 2006 Order, Your Honor stated "If Mr. Palacio fails to send that Designation to ACC O'Flynn by June 30, 2006, then I will recommend to Judge Holwell that he dismiss the case pursuant to Rule 41 of the Federal Rules of Civil Procedure." Plaintiff again failed to provide defendants with the criminal records release by the June 30, 2006 court-ordered deadline. Plaintiff subsequently appealed the June 19, 2006 Order.

By Order dated May 31, 2007, the Honorable Richard J. Howell ordered that plaintiff may (i) proceed against the City of New York on his claim of constitutionally inadequate notice as to the procedure for reclaiming his property and contesting its transfer to a third party and (ii) against Detective Glenn Carboni on his claims of false arrest and false imprisonment. All other claims and defendants were dismissed with prejudice. Plaintiff was once again ordered to provide defendants with a properly executed criminal records release by a date certain on pain of

2

dismissal. After several court orders and appeals, plaintiff finally provided defendants with the executed criminal records release.

## Plaintiff's Continued Failure to Comply with Court Orders

On June 11, 2008 the Court held a telephone conference in this matter. During this conference, Your Honor explained the discovery process to plaintiff and ordered him to answer all questions asked at his deposition.[1] However, plaintiff stated to the Court that he would refuse to answer any questions regarding Indira Montiero, his missing ex-girlfriend. Plaintiff further informed the Court that he would invoke his Fifth Amendment privilege against self-incrimination at the deposition if defendants asked any questions related to Ms. Montiero.

Plaintiff's surviving claims are false arrest, false imprisonment and denial of due process with respect to property allegedly seized pursuant to his arrest. Plaintiff was arrested on April 11, 2000 for violating an order of protection concerning Ms. Montiero. Moreover, plaintiff was a suspect in the homicide investigation of Ms. Montiero. Further, in his Complaint, plaintiff sets forth his version of facts concerning Ms. Montiero and her order of protection against him. (Second Amended Complaint at ¶¶ 2-29). Accordingly, defendants respectfully submit that by filing a claim for false arrest/false imprisonment, plaintiff has placed his relationship with Ms. Montiero at issue. As such, questions regarding Ms. Montiero are crucial to the defense of this case as plaintiff's arrest and seizure of his property centers around Ms. Montiero. Defendants seek to question plaintiff about his relationship and interactions with Ms. Montiero; the prior history of domestic complaints concerning plaintiff and Ms. Montiero; and the order of protection Ms. Montiero had at the time of plaintiff's arrest. A finding of "prejudice" under Rule 37(b) is proper if the failure to make discovery impairs an opponent's ability to determine the factual merits of a party's claim. Avionic Co. v. General Dynamics Corp., 957 F.2d 555, 559 (8th Cir. 1992). Here, plaintiff's willful refusal to answer any questions concerning Ms. Montiero prejudices defendants and prevents them from fully examining the veracity of plaintiff's allegations.

Rule 37(b)(1) of the Federal Rules of Civil Procedure states "[i]f the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court." Here, on June 11, 2008, the court ordered plaintiff to answer all questions posed to him at his deposition and plaintiff clearly stated that he would refuse to answer any questions regarding Ms. Montiero. Moreover, Rule 37(b)(2)(v) states in relevant part that "if a party … fails to obey an order to provide or permit discovery … the court where the action is pending may issue further just orders… [including]… dismissing the action or proceeding in whole or in part." Defendants respectfully submit that the appropriate sanction for plaintiff's refusal to comply with the Court's order is to dismiss the action. Severe sanctions for discovery violations, including dismissal, may be imposed for intentional conduct, such as bad faith or gross negligence. Metropolitan Opera Ass'n, Inc. v.

---

[1] Where oral proceedings unequivocally give a litigant notice that certain discovery is to be produced, the absence of a written order does not preclude the entry of a default judgment for failure to comply. See Jones v. Uris Sales Corp., 373 F.2d 644 (2d Cir. 1967)

3

Local 100, Hotel Employees and Restaurant Employees Intern. Union, 212 F.R.D. 178, 219 (S.D.N.Y. 2003). Though dismissal under Rule 37 is a harsh sanction, its application "is entrusted to the sound discretion of the [trial] court." Avionic Co., 957 F.2d at 558, citing National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976).

Dismissal of the instant action is warranted under the factors set forth in Metropolitan Opera Ass'n, Inc, which include (a) willfulness or bad faith of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party had been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party. Here, plaintiff willfully informed the Court that he would refuse to comply with the Court's order to answer all deposition questions. Second, as set forth above and as the Court is well aware, plaintiff has a lengthy history of noncompliance with the Court's orders. There is no indication that lesser sanctions would be effective, especially in light of plaintiff's history of deliberately disregarding the Court's prior warnings that his case could be dismissed if he did not comply with Court orders. Most significantly, plaintiff's willful refusal to comply with the June 11, 2008 Court order denies defendants the opportunity to examine plaintiff's allegations and prevents them from properly defending this matter, thereby causing defendants great prejudice.

Moreover, it is well settled that when a witness voluntarily puts forth his version of the facts, he cannot then claim immunity from cross examination on those same facts. See Rogers v. United States, 340 U.S. 367 (1951); see also United States of America v. 281 Syosset, 862 F. Supp. 847, 1994 U.S.Dist. LEXIS 13021 (E.D.N.Y. 1994); Klein v. Harris, 667 F.2d 274; 1981 U.S. App. LEXIS 15150 (2nd Cir. 1981); Bagby v. Kuhlman, 932 F.2d 131, 1991 U.S. App. LEXIS 7889 (2nd Cir. 1991); McGautha v. California, 402 U.S. 183, 215 (1971); United States v. Cardillo, 316 F.2d 606, 1963 U.S. App. LEXIS 5485. Here, plaintiff has voluntarily brought this civil rights action. In the complaint in this action, he makes allegations concerning Ms. Montiero and the order of protection that ultimately led to his arrest. Now, plaintiff refuses to allow defendants to elicit testimony from him concerning Ms. Montiero and purports to invoke the Fifth Amendment to avoid disclosure of additional details. Defendants submit that plaintiff's refusal to testify by invoking the Fifth Amendment prejudices them severely.

Accordingly, based on the foregoing, defendants respectfully request that the Court dismiss the action in its entirety pursuant to Rule 37(b) of the Federal Rules of Civil Procedure and such other and further relief as the Court may deem just and proper. In the alternative, defendants respectfully request that the Court dismiss plaintiff's claim for false arrest and false imprisonment.

Thank you for your consideration in this regard.

Respectfully submitted,

Johana Castro (JC 1809)
Assistant Corporation Counsel
Special Federal Litigation Division

cc:    <u>BY MAIL</u>
        Heriberto Palacio
        #06-A-2318
        Plaintiff Pro Se
        Bare Hill Correctional Facility
        181 Brand Road, Caller Box #20
        Malone, New York 12953-0020